IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY W. HALL,<br><br>   Plaintiff,<br><br>   vs.<br><br>NELSON AIRCRAFT SALES, INC., a North Dakota corporation, JASON NELSON, an individual, PIETSCH AIRCRAFT RESTORATION AND REPAIR, INC., a North Dakota corporation, HOLLIE "RED" EWING, an individual, and DOES 1 through 100,<br><br>   Defendants. | No. CV-F-05-1529 REC LJO<br><br>ORDER DENYING DEFENDANTS NELSON AIRCRAFT SALES, INC., AND JASON NELSON'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2).<br><br>(Doc. 18) |

On March 6, 2006, the Court heard Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) (the "Motion"). Upon due consideration of the written and oral arguments of the parties and the record herein, the Court DENIES the Motion, as set forth herein.

**I.   Factual Background**

Defendant Nelson Aircraft Sales, Inc. ("Nelson Aircraft"), is a North Dakota corporation with its principal place of

1

business in North Dakota. Defendant Jason Nelson ("Mr. Nelson"), the President of Nelson Aircraft, is a citizen of North Dakota.

In or around April 2005, Nelson Aircraft and Mr. Nelson (collectively "Seller") placed a listing in "Trade-A-Plane," a national publication. The listing advertised a 1968 Cessna 177 ("the Aircraft") that Seller wished to sell: "1968 177, LOW TOTAL TIME A+E, 1600 TT. Very clean aircraft, no damage history, no hail, paint-7, interior-9, looks/flies excellent, needs nothing, $34,900. ND/(701)838-1998." Compl. ¶ 17.[1]

Plaintiff Gary W. Hall ("Plaintiff"), a California resident, called Seller to inquire about the Aircraft. During the course of several telephone conversations, Seller made representations to Plaintiff, including representing that the claims in the "Trade-A-Plane" listing were true. Seller also claimed that the Aircraft had "absolutely no damage" and that "all avionics were in working condition." Compl. ¶ 18. The parties eventually entered an oral agreement under which Plaintiff would pay $34,900 for the Aircraft. Pursuant to the agreement, Plaintiff transferred $5,000 to Seller's bank account.

At Plaintiff's request, Seller provided the names of

---

[1] Because the Complaint has been verified by Plaintiff, the Court will treat it as if it were an affidavit with respect to facts of which Plaintiff has personal knowledge. See, e.g., Leonard A. Feinberg, Inc. v. Cent. Asia Capital Corp., 936 F. Supp. 250, 255 (E.D. Pa. 1996) (deciding, for the purposes of determining whether plaintiff had made a prima facie case for personal jurisdiction, to "consider the verified Complaint a submission in support of Plaintiff's position" and to "afford it the same consideration I would an affidavit"); Salomon Smith Barney v. McDonnell, 201 F.R.D. 297, 303 (S.D.N.Y. 2001).

2

1 independent inspectors in North Dakota.  Plaintiff hired one
2 inspector, Defendant Pietsch Aircraft Restoration and Repair,
3 Inc. ("Pietsch"), to inspect the Aircraft prior to completion of
4 the sale.  Seller was not involved in negotiating, arranging, or
5 setting the price of this inspection.
6    Seller also provided at the request of Plaintiff the names
7 of deliverers who could transport the Aircraft to California.
8 Defendant Hollie "Red" Ewing delivered the Aircraft to
9 California.  Seller referred to Mr. Ewing as "my ferry pilot."
10 Hall Decl. ¶ 3.  While Mr. Ewing was in California after
11 delivering the Aircraft, he told Plaintiff that he possessed
12 Seller's credit card.  Mr. Ewing represented to Plaintiff that
13 the Aircraft was in good condition, stating that it was "a sweet
14 thing" and "ran strong," and that "all the avionics were good and
15 there was no damage to the plane."  Compl. ¶ 21.  Plaintiff
16 believed that Mr. Ewing was acting as an agent of Seller.
17    After delivery, Seller called Plaintiff in response to
18 Plaintiff's inquiry about documentation for the Aircraft.  Seller
19 told Plaintiff that it had found more records.  Seller then faxed
20 Plaintiff the weight and balance documents for the Aircraft and
21 mailed the microfiche records.
22    When Plaintiff took his first flight in the Aircraft on May
23 13, 2005, he discovered that its avionics were not operating.
24 Compl. ¶ 28.  On May 16, 2005, a third-party inspection of the
25 Aircraft revealed it to be in an "UNAIRWORTHY CONDITION."  Compl.
26 ¶ 30.  Entries in the Aircraft Log indicated the Aircraft had

previously suffered damage on multiple occasions.[2]  Compl. ¶ 29.

**II. Procedural History**

On November 7, 2005, Plaintiff filed this lawsuit, seeking to recover for breach of contract and on intentional and negligent misrepresentation theories. On February 8, 2006, Seller filed this Motion, along with the supporting Declaration of Jason Nelson.[3] On February 17, 2006, Plaintiff filed its Opposition to the Motion and the supporting Declaration of Gary W. Hall. Plaintiff claimed that specific jurisdiction was appropriate because Seller had purposefully directed its activities toward California. On February 24, 2006, Seller filed a Reply.

**III. Discussion**

    **A. Legal Standard**

Plaintiff has the burden to establish a court's personal jurisdiction over a defendant. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). Where the district court rules on the motion to dismiss without holding an evidentiary hearing, the

---

[2] According to the Aircraft Log, on April 24, 1980, the right-hand main gear bolt, two ribs in the stabilator, and pop rivets in the right-hand door post were replaced due to shear. Compl. ¶ 29. The Log also revealed that on May 18, 1982, door damage was repaired. Id. Microfiche reports on the Aircraft revealed that on October 29, 1970, a Federal Aviation Agency Major Repair and Alteration for identified thirty-five parts that had been installed because of damage, including aft fuselage assembly, propeller, prop bulkhead, lower and upper firewall, cabin door, and floor board. Id.

[3] Only Defendants Nelson Aircraft and Mr. Nelson bring this Motion.

4

1  plaintiff need only make a prima facie showing of jurisdictional
2  facts to withstand the motion.  Id.  This requires a plaintiff to
3  demonstrate facts that, if true, would support jurisdiction over
4  defendant.  Id.  "Although the plaintiff cannot 'simply rest on
5  the bare allegations of its complaint,' uncontroverted
6  allegations in the complaint must be taken as true."
7  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th
8  Cir. 2004) (internal citations omitted).  Conflicts between facts
9  contained in the parties' affidavits are resolved in Plaintiff's
10 favor.  AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588
11 (9th Cir. 1996).  "If the Court denies a Rule 12(b)(2) motion
12 because a prima facie case has been shown, the movant can
13 nevertheless put the opposing party to its proof by continuing to
14 contest personal jurisdiction, either at a pretrial evidentiary
15 hearing or at the trial itself."  Ado Fin., AG v. McDonnell
16 Douglas Corp., 931 F. Supp. 711, 717 (C.D. Cal. 1996) (citing
17 Metro. Life Ins. Co. v. Neaves, 912 F.2d 1062, 1064 n. 1 (9th
18 Cir. 1990)).  Where facts bearing on jurisdiction are
19 "intertwined with the merits of the action" determination of
20 jurisdiction at trial is preferable.  Id. at 714 (citing Data
21 Disc, Inc. v. Sys. Tech. Assocs., 557 F.2d 1280, 1285-86 n. 2
22 (9th Cir. 1977)).
23     In ruling on a motion to dismiss for lack of personal
24 jurisdiction in California, a court must consider:  (1) whether a
25 state statute potentially confers personal jurisdiction over the
26 nonresident defendant, and (2) whether the exercise of

5

jurisdiction accords with federal constitutional principles of due process. <u>Congoleum Corp. v. DLW Aktiengesellschaft</u>, 729 F.2d 1240 (9th Cir. 1984) (citing <u>Data Disc</u>, 557 F.2d at 1285-86). California's long-arm statute, California Civil Procedure Code section 410.10, authorizes state and federal courts to exercise personal jurisdiction to the full extent permitted by the Constitution. <u>Congoleum Corp.</u>, 729 F.2d at 1241.

Due process limitations on state power require that the defendant have certain "minimum contacts" with the forum such that haling it into court there "does not offend 'traditional notions of fair play and substantial justice.'" <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 292, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).

### B. Specific Jurisdiction[4]

A defendant is subject to specific jurisdiction only when each of three elements exist: (1) the "nonresident defendant must have purposefully availed himself of the privilege of conducting activities in the forum by some affirmative act or conduct, (2) plaintiff's claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable." <u>Roth v. Garcia Marquez</u>, 942

---

[4] Plaintiff does not contend that Seller is subject to general jurisdiction in California based on "continuous and systematic" contacts with the forum. See <u>Helicopteros Nacionales de Colombia v. Hall</u>, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984).

6

1 F.2d 617, 620-21 (9th Cir. 1991).

### 1.  Purposeful Availment or Purposeful Direction

Courts use the phrase "purposeful availment" as shorthand to refer to both purposeful availment and purposeful direction. Schwarzenegger, 374 F.3d at 802.  The purposeful availment prong is satisfied where the nonresident defendant has "purposely availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" or has purposefully directed its activities toward the forum. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); Dole Food Co. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002).  Courts generally use a purposeful availment analysis for suits sounding in contract and purposeful direction analysis for suits sounding in tort. Schwarzenegger, 374 F.3d at 802.

#### a.  Purposeful Availment

The Court evaluates its jurisdiction over the contract claims under a purposeful availment analysis.  Plaintiff alleges that Seller reached out to California by advertising in a national publication, "Trade-A-Plane," that it knew would reach the forum.  National advertising that appears in the forum is not enough to establish a defendant's purposeful availment of that forum. See, e.g., Ind. Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F. Supp. 743, 746 (C.D. Cal. 1995); Williams v. Canon, Inc., 432 F. Supp. 376, 380 (C.D. Cal. 1977); Growden v. Ed Bowlin & Assocs., Inc., 733 F.2d 1149, 1152 (5th Cir. 1984)

(holding that advertising an aircraft in "Trade-A-Plane" and another national magazine was "insufficient, without more, to constitute a 'purposeful availment' of" the forum).  Courts have considered national advertising as a factor in evaluating personal jurisdiction, especially where it evinces an attempt to serve a national market.  See Vault Corp. v. Quaid Software, Ltd., 775 F.2d 638, 640 (5th Cir. 1985) ("In this case Quaid sought to serve a national market, as shown by its advertising in seven national magazines.").

Here, no evidence exists that Seller was trying to develop a national market.  Plaintiff has not alleged that Seller has made any efforts, other than one national advertisement, to cultivate business in California.  It appears that Seller sought to sell this single plane to whomever was willing to buy it, regardless of where the buyer resided.  That Plaintiff, a California resident, happened to respond does not indicate that Seller reached out to the forum.

Purposeful availment may also be found from the circumstances surrounding the formation of a contract.  The mere existence of a contract between a defendant and a forum resident does not automatically establish sufficient minimum contacts with the forum.  Burger King, 471 U.S. at 478.  To determine whether a contract can establish the minimum contacts necessary for personal jurisdiction, a court should consider "prior negotiations and contemplated future consequences, along with the parties' actual course of dealing."  Id. at 479.  Without the

8

contemplation of a future relationship, ordinary presale communications do not establish purposeful availment. <u>Gray & Co. v. Firstenberg Machinery Co.</u>, 913 F.2d 758, 760-61 (9th Cir. 1990) (declining to find purposeful availment where telephone negotiations and the exchange on an invoice and payment followed plaintiff's purchase inquiry).

    Plaintiff and Seller did have telephone conversations prior to the sale, though Plaintiff appears to have initiated each conversation.  Eventually, Defendant Ewing delivered the Aircraft to California, allegedly as an agent of Seller.  After delivery, Seller, at Plaintiff's request, faxed and mailed certain Aircraft-related documents to Plaintiff in California.  Plaintiff points to no facts that indicate the parties contemplated anything like a "carefully structured" or "continuing" relationship.  <u>See</u> <u>Burger King</u>, 471 U.S. at 480; <u>see also</u> <u>Sher v. Johnson</u>, 911 F.2d 1357, 1362 (9th Cir. 1990) (defendant's phone calls and letters to and acceptance of payment from forum were "normal incidents" of the business relationship that do not evince "the deliberate creation of a 'substantial connection'" with the forum in the absence of "affirmative action to promote business in the forum").  The circumstances of the contract formation do not indicate that Seller availed itself of the benefits of California law.  Therefore, the purposeful availment prong is not satisfied with respect to Plaintiff's breach of contract claim.

### b. Purposeful Direction

Plaintiff contends that Seller committed a tort when it made intentional misrepresentations in connection with the sale of the Aircraft. Courts analyze the purposeful direction of intentional torts under the "effects" test. Calder v. Jones, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The effects test dictates that the purposeful availment requirement is met where defendant has "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state."[5] Dole, 303

---

[5] Seller contends that when the Supreme Court engaged in purposeful direction analysis, it "did not simply do away with its minimum contacts analysis in arriving at this conclusion." Reply 5:26-28. Seller's contention is literally true inasmuch as purposeful direction is just an alternative analysis by which a court can determine that minimum contacts exist. See Data Disc, 557 F.2d at 1288 (evaluating personal jurisdiction over a tort claim based on material misrepresentations and holding that "[t]he inducement of reliance in California is a sufficient act within California to satisfy the requirement of **minimum contacts** where the cause of action arises out of that inducement" (emphasis added)). Seller points out in the context of the reasonableness analysis, for instance, that "this action does not involve a tort or contract ***that would implicate an ongoing relationship***," asserting in its Reply that this restrictive phrase modifies "tort" as well as "contract." Mot. 11:22-23 (emphasis added); Reply 5:7-8. Seller also contended, at oral argument, that the telephone misrepresentation does not establish purposeful availment because Plaintiff, not Seller, initiated the telephone call. It appears that Seller's implication is that personal jurisdiction may not lie, even where a defendant has targeted harmful tortious activity at the forum, if the defendant's contacts with the forum are nevertheless insubstantial in some way. Seller's position is, however, inconsistent with Ninth Circuit authority. See Dole, 303 F.3d at 1111 ("As we have previously recognized, Calder stands for the proposition that purposeful availment is satisfied even by a defendant 'whose only "contact" with the forum state is the "purposeful direction" of a foreign act having effect in the forum state.'"). Furthermore, Seller's invocation of Growden v. Ed Bowlin & Assocs., Inc., 733 F.2d 1149 (5th Cir. 1984), is

F.3d at 1111.

### i.   Intentional Act

Plaintiff alleges Seller directed intentionally tortious acts toward the forum that satisfy the first requirement. First, Plaintiff points out that Defendants placed an advertisement in "Trade-A-Plane," a national publication that Plaintiff received in California. Hall Decl. ¶ 2. The advertisement indicated that the Aircraft was "[v]ery clean," with "no damage history," and that it "looks/flies excellent" and "needs nothing." Id. In a telephone conversation on or about April 19, 2005, Seller informed Plaintiff that the ad was "correct and true." Compl. ¶ 18. Seller claimed that the Aircraft had "absolutely no damage" and that "all avionics were in working condition." Id.

These representations induced Plaintiff to purchase the Aircraft. Compl. ¶ 32. Plaintiff claims that Seller knew the representations that it made were false. On May 13, 2005, when Plaintiff took his first flight in the Aircraft, its avionics were not operating. Compl. ¶ 28. On May 16, 2005, Sierra West Airlines performed an annual inspection of the Aircraft and found it to be in an "UNAIRWORTHY CONDITION." Compl. ¶ 30. The Aircraft Log indicated the Aircraft had previously suffered damage on multiple occasions. Compl. ¶ 29.

---

inapposite to the purposeful direction issue. This is because the court in that case engaged only in a traditional purposeful availment discussion and did not address the effect of intentionally tortious conduct that a defendant directs at the forum. Id. at 1152.

11

Plaintiff has made a prima facie showing that Seller's representations and omissions regarding the condition of the Aircraft amount to fraud giving rise to the tort of deceit. See Agosta v. Astor, 120 Cal. App. 4th 596, 603 (2004). Thus, Plaintiff has met the first requirement of purposeful direction.

### ii.  Aimed at the Forum

Second, an intentional act is expressly aimed at the forum when "'the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state.'" Dole, 303 F.3d at 1111 (quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc., 223 F.3d 1082, 1087 (9th Cir. 2000)). Where a defendant's alleged acts were "'performed for the very purpose of having their consequences felt in the forum state,'" the express aiming requirement is met. Dole, 303 F.3d at 1112 (quoting Brainerd v. Governors of the Univ. of Alberta, 873 F.2d 1257, 1259-60 (9th Cir. 1989)). "The inducement of reliance in California is a sufficient act within California to satisfy the requirement of minimum contacts where the cause of action arises out of that inducement." Data Disc, 557 F.2d at 1288; see Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 212 (5th Cir. 1999) (purposeful availment requirement satisfied where foreign attorney made fraudulent misrepresentations to client in the forum in letters, faxes, and phone calls).

Plaintiff's allegation that Seller intentionally misrepresented the airworthiness of the Aircraft to induce

12

1  Plaintiff to purchase it evinces conduct targeted at Plaintiff in
2  the forum.  The Court rejects Seller's argument that Plaintiff's
3  initiation of the telephone call insulates Seller from personal
4  jurisdiction based on a tort directed at California.  Seller does
5  not contend that it was unaware that Plaintiff was a California
6  resident when it made the alleged misrepresentations and
7  omissions.  Rather, Seller states that "it is not a sufficient
8  basis for jurisdiction that Defendants knew that Plaintiff was in
9  California . . . ."  Mot. 9:13-14.  It is not clear when Seller
10 became aware that Plaintiff was a California resident and whether
11 this was before or after the telephone representations.  In any
12 event, "concealment or nondisclosure" can support the tort of
13 deceit.  See Agosta, 120 Cal. App. 4th at 603.  Thus, Seller's
14 failure to inform Plaintiff of the Aircraft's defects was
15 tortious conduct targeted at California from the moment Seller
16 learned that Plaintiff resided here.  The Court finds that
17 Plaintiff has made a prima facie showing that Seller's alleged
18 conduct was aimed at California.

### iii. Harm in the Forum

20     The Ninth Circuit has not decided the degree of harm that
21 defendant must cause in the forum state to meet the effects test.
22 Dole, 303 F.3d at 1112-13.  A line of Ninth Circuit authority
23 requires that "the brunt of the harm" occur within the forum
24 state.  See id. at 1112; Core-Vent Corp. v. Nobel Indus. AB, 11
25 F.3d 1482, 1486 (9th Cir. 1993).  These cases appear to be in
26 tension with a Supreme Court holding that any significant amount

13

of harm in the forum is sufficient. See Keeton v. Hustler Magazine, 465 U.S. 770, 772-73, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984); Dole, 303 F.3d at 1113. Here, as in Dole, we need not decide between these standards because under either standard, the harm Plaintiff suffered in California is sufficient. See Dole, 303 F.3d at 1113.

Plaintiff is a California resident. He contends that Seller induced him to buy a plane that was not airworthy. Plaintiff suffered all of the harm — spending money and receiving a poorly functioning plane — in the forum state, where he resides. See Dole, 303 F.3d at 1114 (forum resident that defendant induced to approve an injurious transaction suffered harm in the forum). The Court finds that Plaintiff has alleged sufficient harm in California to establish purposeful availment.[6]

### 2. Relationship Between Lawsuit and Defendant's California Activities

The Ninth Circuit employs a "but for" test to determine whether a claim arises from forum-related activities. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). The question is whether, but for Seller's contacts with California, Plaintiff's claims would have arisen. The Court concludes that, but for Seller's alleged misrepresentations to Plaintiff in California,

---

[6] Because Seller's representations over the telephone and subsequent nondisclosure support personal jurisdiction over Plaintiff's fraud claims, the Court need not decide whether the representations in the "Trade-A-Plane" advertisement or Mr. Ewing's representations are also sufficient contacts to establish personal jurisdiction.

14

his claim for deceit would not have arisen.

### 3. Reasonableness

The Ninth Circuit has listed seven factors to balance to determine whether jurisdiction is reasonable:

> the extent of purposeful interjection, the burden on the defendant to defend the suit in the chosen forum, the extent of conflict with the sovereignty of the defendant's state, the forum state's interest in the dispute; the most efficient forum for judicial resolution of the dispute; the importance of the chosen forum to the plaintiff's interest in convenient and effective relief; and the existence of an alternative forum.

Amoco Egypt Oil Co. v. Leonis Navigation Co., 1 F.3d 848, 851 (9th Cir. 1993).  Once a court has decided that the defendant has minimum contacts with the forum, the defendant bears the burden to "'present a compelling case' that the exercise of jurisdiction would, in fact, be unreasonable."  Id. at 851-52 (quoting Shute v. Carnival Cruise Lines, 897 F.2d 377, 386 (9th Cir. 1990), rev'd on other grounds, 499 U.S. 585, 111 S. Ct. 1522, 113 L. Ed. 2d 622 (1991) (quoting Burger King, 471 U.S. at 477)).

#### a. Extent of Purposeful Interjection

As the Court held above, Plaintiff has made a prima facie showing that Seller reached out to California and committed an intentional tort.  Seller's alleged intentional misrepresentation to Plaintiff of the airworthiness of the Aircraft shows purposeful interjection in the forum.  This factor weighs heavily in favor of jurisdiction in California.

### b. Burden on Defendant

Seller claims that Defendants would face a great burden litigating in California because they each live in North Dakota. In none of its briefing did Seller provide any explanation why traveling from North Dakota to California to litigate creates a great burden. At oral argument, Seller mentioned the difficulty of transporting Defendants' witnesses to California for trial. Each party would presumably be inconvenienced by litigation away from its home court. Wherever this case is litigated, witnesses and attorneys will have to travel for depositions and for trial. This factor does not weigh in favor of or against jurisdiction.

### c. Sovereignty of Defendant's State

The sovereignty factor is unimportant where both parties are United States entities. See Burger King, 471 U.S. at 477. In such a case, choice of law rules can accommodate the social policies of another state. Id. This factor does not weigh against the reasonableness of jurisdiction here.

### d. Forum State's Interest

California has some interest in protecting residents who contract with out-of-state parties to purchase goods. It also has some interest in the safety of aircraft based here. North Dakota has an interest in regulating those who sell aircraft there and in enforcing the agreements they make. This factor does not weigh against jurisdiction in California.

### e. Most Efficient Resolution

Seller gave no reason in its briefing why litigation in California would be less efficient than in North Dakota. At oral argument, Seller contended for the first time that a North Dakota forum would be more efficient because employees of Defendants, who would likely be witnesses at trial, reside there. Other witnesses, such as those who could testify to the condition of the aircraft after delivery to California, would be inconvenienced by a North Dakota forum. This factor does not indicate that jurisdiction in California is unreasonable.

### f. Convenient and Effective Relief for Plaintiff

It would be easier for Plaintiff to litigate in California, closer to home. However, dismissing the case in favor of North Dakota would not prevent Plaintiff from obtaining relief. This factor does not weigh for or against a California forum.

### g. Existence of Alternative Forum

This diversity action could be brought in North Dakota, where all Defendants reside. See 28 U.S.C. § 1391(a)(1). This weighs slightly against jurisdiction in California.

### h. Balancing the Factors

None of the factors weighs heavily against jurisdiction in California. On the other hand, the alleged intentional acts of Defendants amount to purposeful interjection that weighs heavily in favor of jurisdiction. Defendants have not made a "compelling" showing that California would be an unreasonable forum to make personal jurisdiction inappropriate. See Amoco

17

Egypt, 1 F.3d at 851-52.

Accordingly, the Court holds that personal jurisdiction over Seller is appropriate with respect to the intentional tort claims.

### C. Pendent Personal Jurisdiction

Where a district court has jurisdiction over certain claims against a party, but not others, it has discretion to exercise pendent personal jurisdiction over the other claims. CE Distrib., LLC v. New Sensor Corp., 380 F.3d 1107, 1113 (9th Cir. 2004) (district court properly exercised pendent jurisdiction over contract claim based on personal jurisdiction over intentional tort claim).  A court may require a party to defend a claim that lacks an independent basis of personal jurisdiction if it "'arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction.'" Id. (quoting Action Embroidery v. Atl. Embroidery, 368 F.3d 1174, 1180 (9th Cir. 2004)).

Plaintiff has pleaded five causes of action against Seller: (1) Breach of Contract; (2) Fraud and Deceit — Intentional Misrepresentation of Fact; (3) Fraud and Deceit — Negligent Misrepresentation of Fact; (4) Fraud and Deceit — Supression of Fact; (5) Fraud and Deceit — Fraud in Sale of Personal Property. Seller's alleged intentional acts toward the forum establish personal jurisdiction over it for the intentional tort claims only:  the Second, Fourth, and Fifth Causes of Action.  The Breach of Contract claim, the Negligent Misrepresentation claim,

18

and the other claims, however, arise out of a common nucleus of fact.  All claims concern communications and other conduct surrounding Plaintiff's purchase of the Aircraft.  The intentional tort claims, like the other claims, depend on what representations Seller made about the Aircraft, whether the representations were accurate, and the state of Aircraft when delivered.  Therefore, "[w]hether to exercise pendent personal jurisdiction is committed to the sound discretion of the district court."  CE Distrib., 380 F.3d at 1113.

Considerations of "judicial economy, avoidance of piecemeal litigation, and overall convenience of the parties" are served by retaining jurisdiction over the all of the claims against Seller.  See Action Embroidery, 368 F.3d at 1181.  Otherwise Plaintiff and Seller could be faced with litigation in multiple fora, with certain claims remaining before this Court and other claims properly brought elsewhere.  If the Court grants jurisdiction and then the intentional tort claims fail as a matter of law, the remaining claims may then be dismissed for lack of personal jurisdiction.  See Rosenberg v. Seattle Art Museum, 42 F. Supp. 2d 1029, 1038 (W.D. Wash. 1994).

**ACCORDINGLY**, Seller's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) is DENIED.

IT IS SO ORDERED.

**Dated: March 9, 2006**            /s/ Robert E. Coyle
810ha4                              UNITED STATES DISTRICT JUDGE